## W. E. GOODRICH v. THOMAS O'CONNOR.

DESCENT AND DISTRIBUTION—HEIRS—STATUTE CONSTRUED.—Under an act of the Legislature passed in 1856, land certificates were granted "to the heirs" of one who died in March, 1836: *Held,* That those who would have been entitled to inherit as heirs under the laws in force in 1836, were entitled to the legislative grant, and not those who were made heirs under the laws of descent and distribution in force in 1856, when the act was passed.

APPEAL from Victoria. Tried below before the Hon. H. Clay Pleasants.

The opinion states the case.

*Lackey & Stayton,* for appellant.

I. Land granted by virtue of a headright certificate issued to the heirs of one who fell at Goliad on the 27th day of March, 1836, in the Fannin massacre, the mother of the decedent being dead at the time of his death, vested in the father of the deceased, to the exclusion of his brothers and sisters. (Paschal's

Dig., arts. 4150, 4157–4161; Organic act of Provisional Government, art. 15; General Provisions, Const. of Rep. of Texas, sec. 10; Warnell v. Finch, 15 Tex., 163; Barclay v. Cameron, 25 Tex., 241; Duncan v. Veal, 49 Tex., 604; Prendergast v. Anthony, 11 Tex., 167; Hansford v. Minor's Heirs, 4 Bibb, 385.)

II. The special act of the Legislature was not the origin or basis of the right of the heir of Charles. S. Hardwick to the certificate with which the land in controversy was located, but was simply a direction to the commissioner of the land office to issue the certificate without requiring evidence such as was contemplated by articles 4157 and 4166 of Paschal's Digest.

III. If the special act of the Legislature approved February 7, 1856, was the basis of the right to the headright certificate under which the land in controversy was granted, then the person upon whom the law, as it was at the time of the death of Charles S. Hardwick, cast his estate immediately upon his death was the only person who can be said, in a legal sense, to be his heir. (25 Tex., 241; Hansford v. Minor's Heirs, 4 Bibb, 385.)

*Glass & Callender*, for appellee.

I. We deny appellant's first proposition, and say, in regard to the headright in controversy, that when Charles S. Hardwick died there was no right in him to any headright certificate which could descend to or vest in his father, or in any other person.

The record shows that Charles S. Hardwick perished with Colonel Fannin, in the massacre at Goliad, in March, 1836. It shows nothing else in regard to him, except who were his next of kin. The court judicially knows that the massacre occurred on March 27 of that year. There is nothing in the record to show how or when or why Charles S. Hardwick came to Texas; nothing to show whether he was here at the time of the adoption of the Provisional Government, in November,

1835; or at the Declaration of Independence, March 2, 1836; or at the adoption of the Constitution of the Republic, March 17, 1836; or that he was, when he died, within the provisions of any law then existing which entitled him to a headright certificate. (Art. 15 of Prov. Gov't, Paschal's Dig., p. 27; sec. 10 of Const. of Republic, Paschal's Dig., p. 27.)

II. We deny the second proposition of appellant, and say that the headright and other certificates issued to "the heirs" of those who fell with Fannin, Travis, &c., did not vest in such heirs by any right of inheritance from those who fell; that the persons who took under the designation of "heirs" did not hold from their ancestors, but held as the immediate grantees of the government; and that the special act of 1856 is the only legal basis of the right of the heirs of Charles S. Hardwick. (Warnell *v.* Finch, 15 Tex., 163; Causici *v.* La Coste, 20 Tex., 286.)

However meritorious the services of Charles S. Hardwick may have been, there is nothing in the record to show that they were performed under any contract with the Republic, or that they imposed any obligation upon the government which the law recognized; and therefore the grant made in consideration of those services must be regarded, in a legal sense, merely as an act of sovereign grace on the part of the political power, and as conferring a pure donation. (Causici *v.* La Coste, 20 Tex., 286.)

The fact that a special act was obtained for the relief of the heirs of Charles S. Hardwick raises the presumption that they were not able to bring themselves within the provisions of the general law granting certificates to the heirs of those who fell with Travis, Fannin, &c., and therefore they applied to the Legislature for a special grant; and the proper inquiry is, Whom did the Legislature intend to designate by the term "heirs" in the special act of 1856? It is reasonable to presume that they meant all those who were "heirs" according to the law as it then stood, and who probably were the parties at whose request the special law was passed.

III. Courts construe the word "heirs," in grants and statutes, to mean the parties who could take as heirs at the death of the ancestor, only where there was some right in the ancestor which the law could recognize, and which could descend and vest at his death, and not where a mere donation is, long afterwards, made to the kindred of the deceased.

GOULD, ASSOCIATE JUSTICE.—Under a special act of the Legislature approved February 7, 1856, entitled "An act for the relief of the heirs of Charles S. Hardwick," the commissioner of the general land office was "authorized and required to issue to the heirs of Charles S. Hardwick" a headright certificate for one-third of a league, a bounty warrant for nineteen hundred and twenty acres, and a donation warrant for six hundred and forty acres, "in consideration of the said Charles S. Hardwick having fallen with Fannin at Goliad, said certificates, when issued, to be located, surveyed, and patented as other certificates of a similar character." The single question presented for our decision is, whether the headright certificate issued under this special act became the property of the father of Charles S. Hardwick, he being, under the law in force on March 27, 1836, the date of his son's death, his sole heir; or whether it became in part the property of the brothers, sister, and daughter of a deceased sister of said Charles, who, under the law of descent in force at the date of the special act, would have been heirs jointly with the father, had the death occurred then. Our opinion is, that the word "heirs" in the special act refers to him or them entitled to the estate under the law of descent in force at the time of the death. Such we regard as the natural and ordinary signification of the word as used in the statute, and so far from seeing in other legislative provisions bearing on the subject any reason for giving the statute a different construction, our opinion is that they tend to establish it.

The land in controversy was patented to the heirs of Charles S. Hardwick by virtue of the headright one-third of a league certificate, and the plaintiff having shown title to the certificate

from the sole heir, the court erred in awarding to him only one-half of the tract. No question has been presented as to any equity growing out of services rendered by the vendors of O'Connor in procuring duplicates of lost certificates, or in locating and procuring patent for the land.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.