Ellen COKER, Appellant,

v.

Elizabeth ECKERT, Independent Executrix of the Estate of Minnie Dora Mynatt, Dec., et al., Appellees.

No. 16435.

Court of Civil Appeals of Texas.

Fort Worth.

June 21, 1963.

Rehearing Denied July 19, 1963.

Charles L. Morgan and Ernest May, Fort Worth, for appellant.

Hudson, Keltner, Jordan, Smith & Cunningham and Walter E. Jordan, Fort Worth, for appellees

MASSEY, Chief Justice.

Important persons whose identity must be kept in mind for a clear understanding

of what we are to say herein are: Minnie Dora Mynatt, who died in 1950,—her brother, William Denson Mynatt, who died about 1953,—another brother, Tom Mynatt, who died on April 4, 1961,—a nephew, Mynatt Coker, who died in 1957,—Sarah Bessie Coker, who is living,—and Dorothy Ann Mynatt Farmer, who is living. Sarah Bessie Coker and Dorothy Ann Mynatt Farmer are the persons who would take the portion of the estate of Minnie Dora Mynatt which is in controversy, should the same pass (out of her) according to the Laws of Descent and Distribution of the State of Texas.

When Minnie Dora Mynatt died in 1950 she left a will. By it she made a niece, Elizabeth Eckert, sole Independent Executrix of her estate and also sole Trustee vested with discretion and authority to do the things called for in her will. Elizabeth Eckert and Dorothy Ann Mynatt (Farmer) were the two nieces mentioned in the will and Elizabeth Eckert is the daughter of Sarah Bessie Coker. Mynatt Coker, who died in 1957, was the nephew mentioned in the will, a son of Sarah Bessie Coker. Mynatt Coker died without child or children surviving him. His widow is Ellen Coker.

By the will of Minnie Dora Mynatt, after disposition of a specific portion of her property, which need not be hereinafter noticed, she cast the balance thereof in trust, with the trustee authorized to use such portion of the income from her estate as might be deemed necessary for the support of her two brothers aforementioned. In the event of necessity the trustee was authorized to invade the corpus of the trust to accomplish such purpose, unrestrictedly and without limitation.

Thereafter the will provided by Paragraph X as follows: "*After* caring for my two brothers in the manner aforesaid, if the need or necessity has existed, *then upon the death of the survivor,* all of the balance of *my estate* then remaining *shall be divided into three* (3) *equal parcels,* and one each *shall pass to my nephew MYN-* *ATT COKER* and to my nieces ELIZABETH ECKERT and DOROTHY ANN MYNATT, in equal portions, share and share alike; and *in the event of the prior death* of either, *then the interest to which each would have been entitled if living shall pass to* and be equally divided among his (or her) *surviving children,* in which event the surviving spouse shall act as guardian without bond; and *should* these *beneficiaries die without* leaving *children surviving,* then the interest to which each would have been entitled, if living, *shall pass in accordance with the Laws of Descent and Distribution* of the State of Texas." (Emphasis supplied.)

A dispute arose upon and subsequent to the time of the termination of the trust established by the will, when Tom Mynatt died on April 4, 1961. The persons who would be entitled to take in the place and stead of Mynatt Coker (because of his death in 1957), as the heirs of Minnie Dora Mynatt under the Laws of Descent and Distribution, were Sarah Bessie Coker and Dorothy Ann Mynatt Farmer. They claimed one of the three equal parcels mentioned in the will, to-wit: the portion which would have passed to Mynatt Coker, had he been alive on and after April 4, 1961. Ellen Coker, surviving widow of Mynatt Coker, also claimed the portion. Her claim was to the full portion under and by virtue of the will of Mynatt Coker, which left all his property to her. Alternatively, she claimed the lesser interest provided under Texas Probate Code, Art. 38, V.A.T.S., "Persons Who Take Upon Intestacy", (b) "Intestate Leaving Husband or Wife", on the theory that the will of Minnie Dora Mynatt provided that the interest of Mynatt Coker would pass (out of him) by the Laws of Descent and Distribution. The dispute resulted in suit for a declaratory judgment to construe the will of Minnie Dora Mynatt.

The question posed by the litigation was actually whether the "remainder" interest in question became an absolute "vested" interest in Mynatt Coker upon the death of Minnie Dora Mynatt,—became an in-

terest which was "contingent" only and not to vest until the date of the death of Tom Mynatt on April 4, 1961,—or became an absolute gift or devise upon the earlier date, *defeasible* by an executory gift-over in the event Mynatt Coker died prior to Tom Mynatt, without surviving children.

■ Paraphrased, we believe it might be properly said that the will read and provided as follows: "Upon the death of Tom Mynatt my estate shall be divided into three parcels, one of which shall pass to my nephew Mynatt Coker; and in the event of his prior death the interest to which he would have thereupon become entitled, if living, shall pass to his surviving children; but if he should die without leaving children surviving then the interest to which he would have been entitled, if living shall pass in accordance with the Laws of Descent and Distribution of the State of Texas."

If, as we believe, the provisions of the will are not distorted and are accurately stated in the language paraphrased, there is no ambiguity in the will and its provisions, and it is specific, definite and certain, and unnecessary of construction. There being no necessity for judicial construction, it remains only to declare the same according to its express import. The testatrix provided that whether Mynatt Coker should ever receive or become entitled to an interest in the "remainder" thereof would be determinable at the death of Tom Mynatt and upon the termination of the trust created by the will, and would be "contingent" upon a condition, precedent, to-wit: that he then be alive to receive it.

The same thing might be said as to any child or children of Mynatt Coker, despite his prior death, for it was plainly required that such child or children must be alive to receive his or their father's interest in his place and stead on the date of Tom Mynatt's death.

■ Application of rules of construction must yield readily and are subordinate to the fundamental principle that the testator's intention, as gathered from the whole will, is the controlling guide. That this great fundamental rule may prevail and the property of the testator take the posthumous course intended by the owner, other rules are made and unmade. Anderson v. Menefee, 1915 (Tex.Civ.App., Fort Worth), 174 S.W. 904, 908, error refused; 57 Am. Jur., p. 731, "Wills", § 1135, "Subordination of Rules of Construction to Intention". Furthermore, in every case the law looks diligently to the context of the will, and if there be any words in the will that indicate, though slightly, *that it was not the intention of the testator to vest the estate, they will be given that effect.* St. Paul's Sanitarium v. Freeman, 1909, 102 Tex. 376, 117 S.W. 425, 132 Am.St.Rep. 886. See also 57 Am.Jur., p. 818, "Wills", § 1237, "Death Alone as a Contingency".

If legal construction of the will were necessary, although we do not believe such requisite, the principles to be applied would nevertheless result in the defeat of the claim of Ellen Coker. In St. Paul's Sanitarium v. Freeman, supra, opinion by Judge Gaines, there was a construction of a will provision which read, " 'Third. It is my will and desire that in the event the said Robert M. Freeman shall die without issue then it is my will and desire that all of my said property willed as aforesaid be given to St. Vincent de Paul Institution or order, for the benefit of the sick Sisters of that order in Dallas county, Texas.' " An antecedent paragraph purported to give all the testator's property to Freeman. Freeman brought the suit to construe the will, hoping to obtain final adjudication that he held the property of the testator free and clear, forever, of any claim by St. Paul's. Judge Gaines said: "Now dying without issue is no certain event. Freeman may die without issue, or he may not." His holding was that the will's devise was an absolute gift, *defeasible* by an executory gift-over in the event Freeman should die at any time without child or children. See 17 Tex.Jur., p. 110, "Estates", § 11, "Base, Qualified, De-

terminable or Conditional Fee", and 22 Tex.Jur.2d, p. 649, "Estates", § 6, "Vested and contingent estates". Certain language in a later Supreme Court opinion seems to treat a fee which is "vested, but defeasible", as simply a "conditional" fee. See Harrell v. Hickman, 1948, 147 Tex. 396, 215 S.W. 2d 876, 878.

■ We find no Texas cases among those annotated in 144 A.L.R. 1155, et seq., " 'Divide and pay over' rule, for purpose of determining vested or contingent character of future estate",—supplemented in 16 A.L.R.2d 1383, et seq. The "Rule" is readily understandable by reference to 57 Am. Jur., p. 811, "Wills", § 1231, "The 'Divide and Pay Over' Rule". Thereunder it is stated that where the only words of gift in a testamentary disposition of property are contained in a direction to pay, divide, convey, or distribute at a time subsequent to the death of the testator, time is to be taken as of the essence of the gift, and the legacy or devise is to be regarded as "contingent" rather than "vested". In the instant case there is present none of the limitations, qualifications or exceptions to be found in the section following (§ 1231), and if construction were necessary on the ground of some ambiguity the case could properly be considered as one in which the basic "Rule" would be clearly applicable.

In the brief of Ellen Coker, strong reliance is placed on the case of Caples v. Ward, 1915, 107 Tex. 341, 179 S.W. 856. We do not believe the case authoritative in the present instance. In the opinion itself is stated (179 S.W. at page 858), "The remainder is not made contingent by uncertainty as to the amount of the estate remaining undisposed of at the expiration of the life estate, *but by uncertainty as to the persons who are to take*". (Emphasis supplied.) In 57 Am.Jur., p. 802, "Wills", § 1217, "Distinctions between 'Vested', 'Contingent', and 'Vested Subject to Divesting' ", is stated, " * * * a 'contingent' interest (is) one which is uncertain either as to the person who will

enjoy it in possession or as to the event on which it will arise." It is further stated, " * * * the courts (also) recognize an intermediate interest, commonly called a 'vested interest subject to divesting, divestiture, or defeasance.' " Such an intermediate circumstance was declared to be existent under the holding in St. Paul's Sanitarium v. Freeman, supra.

■ Actually we believe the ultimate "remaindermen" contemplated by the will of the testatrix were Minnie Dora Mynatt's heirs under the Laws of Descent and Distribution in effect at date of her death, their "contingent" interest having been made dependent upon the condition that at the time of the death of Tom Mynatt neither Mynatt Coker nor any child or children of his be alive to take. In turn, Mynatt Coker's "contingent" interest would depend upon his remaining alive when Tom Mynatt died, that being the time when the grant or devise to him was limited to take effect in possession. 36 Tex.Jur., p. 877, "Remainders and Reversions", § 7, " 'Contingent' Estates". When a will makes survival a condition precedent to the vesting of a remainder it must be held contingent. Guilliams v. Koonsman, 1955, 154 Tex. 401, 279 S.W.2d 579, 582, 57 A.L.R.2d 97.

We admit the ambiguity of the will in respect to whether the heirs "in accordance with the Laws of Descent and Distribution" would be Mynatt Coker's or would be Minnie Dora Mynatt's, and in respect also as to the proper date to examine the state of the Laws of Descent and Distribution in order to determine the identity of heirs thereunder. Finley v. Finley, 1959, 159 Tex. 582, 324 S.W.2d 551. However, necessity to resolve that question would be contingent upon the existence of some ambiguity as applied to antecedent provisions in Paragraph X of the will, plus a construction thereof contrary to that we said would have been proper had construction been necessary. We hold that no such ambiguity existed requiring application of rules of construction, and that if they were applied

the result would nevertheless defeat the claim of Ellen Coker. We do not necessarily reach the question of "what might be" if some different construction "might have been". Therefore we will not further lengthen this opinion.

What we have said is wholly in accord with the decision and judgment of the trial court. That judgment is affirmed.